UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KHEIRALLAH AHMAD, | ) | CASE NO. 4:09 CV0438 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

Before the court is *pro se* petitioner Kheirallah Ahmad's above-captioned petition filed pursuant to 28 U.S.C. § 2241. Mr. Ahmad, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio, filed this action against F.C.I. Elkton Warden J. T. Shartle. He challenges both the charge leveled by the prison against him and the attendant loss of privileges as punishment for the alleged infraction. Mr. Ahmad seeks an order expunging the incident from his record, a one-year reduction in sentence, a prison transfer to either Fort Dix or Fairton to be closer to his family, and removal of his name from the "hot list of inmates who received constant drug testing." (Pet. at 16.)

## *Background*

Mr. Ahmad pleaded guilty in 2007 to conspiracy to file false tax returns in the United States District Court for the Eastern District of Pennsylvania. *See United States v. Ahmad*, No.

2:07cr322 (E.D. Pa. 2007). He was sentenced to two concurrent terms of 48 months imprisonment on January 30, 2008. Mr. Ahmad appealed his sentence the next day to the Third Circuit Court of Appeals, where the matter is still pending. *United States v. Ahmad*, No. 08-1374 (3rd Cir. 2008).

A review of the Incident Report attached to Mr. Ahmad's petition reveals that on May 7, 2008, at approximately 1:45 p.m., Mr. Ahmad's secure locker at the Federal Correctional Institute in Gilmer, West Virginia (F.C.I. Gilmer) was searched. The search revealed two Topamax tablets at 200 mg each. The medicine was not prescribed by F.C.I. Gilmer medical staff. Further, Topamax is "considered a Hot medication" by the prison. An incident report was prepared that charged petitioner with possession of a drug not prescribed for the individual by Medical Staff, a Code 113 violation. A copy of the report was hand delivered to petitioner on May 7, 2008 at 10:00 p.m. The following day, Case Manager Louk advised Mr. Ahmad of his rights before the Disciplinary Hearing Officer (DHO).

A Disciplinary Hearing was held on May 28, 2008. At Mr. Ahmad's request, Counselor Frame appeared as his staff representative. Petitioner denied the charge. He explained he suffers from severe back pain and went to the prison's pill line twice, but did not receive any medication. Because he was in such severe pain, Mr. Ahmad alleges other inmates had to carry him back to his bed. A friend later gave him some pills to alleviate the pain. Petitioner states he never read the handbook and, therefore, did not realize he was prohibited from taking medication from other inmates.

To evaluate the case, the DHO examined a May 7, 2008 memo from Clinical Director Ellen Mace Leibson, petitioner's medication information, as well as a photograph taken by staff member Lt. J. Bell on May 7, 2008. Based on all of this evidence, the discovery of unauthorized

Topamax tablets in petitioner's secure locker, and Mr. Ahmad's explanation that he was unaware he was not authorized to receive medicine from other inmates, the DHO found petitioner committed the prohibited act of Code 113, Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff. Petitioner was sanctioned with the forfeiture of 41 days Good Conduct Time, 60 days disciplinary segregation, and 90 days commissary restriction.

A copy of the DHO's findings was delivered to Mr. Ahmad on June 6, 2008. On June 10, 2008, a Regional Administrative Remedy Appeal ("Exhibit E") was submitted by petitioner. He received a Rejection Notice ("Exhibit D") from the Administrative Remedy Coordinator, dated July 24, 2008. The notice advised petitioner that his appeal was rejected for the following three reasons: (1) Mr. Ahmad's failure to provide a copy of the DHO's report with his appeal; (2) untimeliness from the date of the warden's response; and, (3) untimeliness from petitioner's receipt of the DHO's report. Mr. Ahmad was advised he could provide written verification on BOP letterhead from the staff if he was claiming staff delay. There is no evidence or any allegation petitioner responded to the Regional Office's rejection notice.

In his petition before this court, Mr. Ahmad argues four grounds for relief: (1) denial of due process by the Regional Office when it rejected his appeal as untimely; (2) violation of due process when F.C.I. Gilmer charged him with an offense of the "Greatest Severity Category" when it should have been a "Moderate Severity Category;" (3) denial of due process based on a defect in the chain of command regarding the individual who searched his locker; and (4) denial of due process to charge him with a severe offense after he failed to complete the BOP's Admission and Orientation Class.

*28 U.S.C. § 2241*

Claims asserted by federal prisoners seeking to challenge the execution or manner in which a sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir.1977). Here, the petitioner has properly filed his request for habeas relief in this court, as it has personal jurisdiction over his custodian. The substance of his petition fails, however, as a matter of law.

*Process Due - Disciplinary Hearings*

A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir.1993). A prisoner must possess a legally protected interest in the subject matter at issue before he is entitled to the protections of due process. Prison sanctions which impose the forfeiture of Good Credit Time (GCT), will inevitably affect the duration of a prisoner's sentence. It is under those circumstance that a prisoner is entitled to the protections of procedural due process before he may be deprived of those sentence credits. *Id.* at 482-84.

Addressing each of his sanctions, first, the petitioner had no liberty interests relative to his commissary privileges, and therefore no constitutional deprivations are implicated as a result of his temporary loss of that privilege. Second, there is no liberty interest in remaining free from administrative or disciplinary segregation. *See Hewitt v. Helms, 459 U.S. 460, 468 (1983);Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir.2003); *Singleton v. Patton*, No. 07-CV-69-HRW, 2007 WL

2228558, at *3 (E.D. Ky. July 30, 2007). Thus, any failure to provide the due process protections described in *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) does not afford a basis for relief.

The record reveals that Mr. Ahmad received all due process protections required by *Wolff*, when faced with the loss of GCT. Petitioner argues the rejection of his appeal as untimely deprived him of due process. The record reflects, however, that: 1) Mr. Ahmad was advised of the charges and of his rights more than 24 hours before each appearance before the DHO; 2) Mr. Ahmad was given the opportunity to call witnesses; 3) Mr. Ahmad was given the right to be assisted at the hearing by a staff representative; 4) Mr. Ahmad was advised in writing of the DHO's findings, the specific evidence relied upon, and the reasons for the sanctions imposed; and 5) Mr. Ahmad was advised of his right to appeal the sanctions. Thus, the fact that his appeal was rejected as untimely did not violate his due process rights. Moreover, petitioner did not suffer an atypical and significant hardship because the prison held him accountable for possessing unauthorized drugs even though he did not fully complete the Admissions Orientation class. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995).

Finally, the record shows an evidentiary basis for the disciplinary decision. When a decision regards disciplinary charges, the record must contain "some evidence" to support the decision. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56 (1985). Mr. Ahmad freely admitted that he was in possession of Topamax from another prisoner. Thus, there was some evidence that he committed the offense, which falls within the regulatory Greatest Severity Category. See 28 C.F.R. §541.13.[1]

---

[1] The Code mandates that for "Greatest category offenses, [t]he Discipline Hearing Officer (DHO) shall impose and execute one or more of sanctions A through E."

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A.GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 5/14/09